# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

THOMAS KLEIN,
      Petitioner,

    vs.

WARDEN, OHIO STATE
PENITENTIARY,
      Respondent.

Case No. 1:21-cv-357

McFarland, J.

Bowman, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Ohio State Penitentiary, has filed a pro se

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is

before the Court on the petition, the return of writ, and petitioner's reply. (Doc. 1, 16, 17).

For the reasons stated below, the undersigned recommends that the petition be dismissed

because it is time-barred pursuant to 28 U.S.C. § 2241(d)(1).

## I.   FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's

convictions and sentence:[1]

> At trial, Linda Kusmann testified that in the early evening on March 29, 2005, she
> was at home with her adult daughter, Sarah Combs, her five-month-old
> granddaughter, Daisy, and Combs's fiancé, Michael Cross, when she saw Klein
> standing in her kitchen. She did not know Klein and asked Combs and Cross if
> they knew him. When they both responded that they did not, Kusmann started
> yelling at Klein and told him to leave or she would call the police. Klein did not
> leave. When Kusmann attempted to use the telephone, Klein took it away from

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court
shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence. Because
petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual
findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365
F.3d 487, 493-94 (6th Cir. 2004).

her.  He then pulled out a gun and appeared to load it in front of Kusmann, Combs, and Cross.  Kusmann begged Klein not to hurt them.  She claimed that Klein told them that the police were going to kill him and that if they did not try to contact the police, then he would not hurt them.

Cross testified that he too had asked Klein to leave and requested that Klein allow the women and baby to leave the home.  Klein said no to both requests.  Klein then ordered Cross to accompany him to a stairwell, where Klein contemplated suicide.  Klein then ordered Cross to go outside and look for the police under the auspices of taking out the garbage.  After exiting, Cross was apprehended by the SWAT team.

Combs testified that she and Kusmann had to remain inside the home with Klein until Klein agreed to release them to Rodney Chapman, a SWAT-team negotiator.  Klein sent Kusmann and the baby outside first.  He then walked out with Combs and shoved his gun and extra ammunition into Combs's pants.  Klein then surrendered to the SWAT team.  Officer Schweppe retrieved the gun and extra ammunition from Combs and removed the magazine.  Schweppe then handed the gun to Sergeant Steve Ballinger.  Ballinger testified that the Glock 17-C 9-mm handgun had a round of ammunition in its chamber and was operable.  The crisis for the Kusmann-Combs-Cross family lasted several hours.

Klein represented himself at trial and testified on his own behalf.  He admitted that he had entered the victims' home through a closed screen door to avoid apprehension from a police officer who was chasing him.  Klein claimed that he intended only to seek refuge from the police in the home, and that he did not intend to ''burglarize" the home or to "kidnap" its occupants.  He acknowledged that he was holding a gun, but claimed that he was disarming the weapon when the victims thought that he was loading it.  He stated further that he had readied the gun later because he was contemplating suicide.

Klein admitted to having several prior felony convictions and stipulated to the fact that he was under a disability that prevented him from possessing the gun.

(Doc. 15, Ex. 38).

## II.  PROCEDURAL HISTORY

### State Trial Proceedings

On April 8, 2005, the Hamilton County, Ohio, grand jury returned an eight-count indictment charging petitioner with two counts of aggravated burglary, four counts of

2

kidnapping, and one count each of receiving stolen property and having weapons while under disability.  (Doc. 15, Ex. 1).  Petitioner entered a plea of not guilty to the charges in the indictment.  (Doc. 15, Ex. 2).

Counsel for petitioner subsequently filed a plea of not guilty by reason of insanity.  (Doc. 15, Ex. 6).[2]  On August 2, 2005, the trial court concluded that petitioner was competent to stand trial.  (Doc. 15, Ex. 7).  The trial court issued an additional entry on October 20, 2005, again finding petitioner competent to stand trial.  (Doc. 15, Ex. 9).

Petitioner filed a motion to dismiss due to speedy trial violations, which was denied by the trial court.  (Doc. 15, Ex. 11, 12, 16).

Petitioner's first jury trial resulted in a mistrial.  (Doc. 15, Ex. 14).[3]  Following a second jury trial, petitioner was found guilty of one count of aggravated burglary, four counts of kidnapping, and one count of having weapons while under disability.  (Doc. 15, Ex. 27).  On June 13, 2006, petitioner was sentenced to serve a total aggregate prison sentence of thirty-two years in the Ohio Department of Corrections.  (Doc. 15, Ex. 28).

Petitioner, through new counsel, filed a timely notice of appeal to the Ohio Court of Appeals.  (Doc. 15, Ex. 29).  Petitioner filed a motion to withdraw appellate counsel and proceed

---

[2] Petitioner also filed a motion to proceed as co-counsel, motion to dismiss, and motion to change plea to not guilty by reason of insanity.  (Doc. 15, Ex. 3, 4, 5).  On December 7, 2005 he withdrew his pending pro se motions.  (Doc. 15, Ex. 10).

[3] The trial court issued an "Opinion on Granting Motion for Mistrial" which detailed petitioner's opening statement and the trial court's conclusion that granting a mistrial was the only option.  (*See* Doc. 15, Ex. 14).  Petitioner filed a response to the opinion, three motions/supplements to dismiss on double jeopardy grounds, and a response to the court's denial of his motion to dismiss on speedy trial grounds. (Doc. 15, Ex. 15, 17, 18, 19, 20).  Petitioner filed an additional motion to dismiss on April 3, 2006, based on his claim that he did not receive a recording of a 911 call, which was overruled by the trial court.  (Doc. 15, Ex. 23, 24).  On April 24, 2006, petitioner executed a waiver of counsel.  (Doc. 15, Ex. 25).  On May 31, 2006, petitioner filed an amendment to his motion to dismiss on double jeopardy grounds.  (Doc. 15, Ex. 26).

pro se, which was granted by the Ohio Court of Appeals. (Doc. 15, Ex. 30, 31). In his appellate

brief, petitioner raised the following five assignments of error:

> 1. The trial court erred to the prejudice of defendant by ordering a prisoner identification tag be worn throughout trial, T.P. 396.
>
> 2. The trial court erred to the prejudice of defendant by denying Rule 29(C) motion that conviction was against the sufficiency and manifest weight of the evidence, T.P. 1315.
>
> 3. The trial court erred to the prejudice of defendant by refusing/excluding relevant testimonial and documentary evidence in his defense. T.P. 354, 1125.
>
> 4. The trial court erred to the prejudice of defendant by refusing to allow him participation in the adversary process by ruling on the State's motion in limine and motion to exclude testimony of juror's on the same day it was filed, thus depriving defendant of an evidentiary hearing on his double jeopardy motion, T.P. 331-333.
>
> 5. The trial court erred to the prejudice of defendant by denying his motion to dismiss on double jeopardy grounds when the facts established by the trial court itself mandate a finding that retrial was in violation of the double jeopardy clause, T.P. 351.

(Doc. 15, Ex. 32). On June 20, 2007, the Ohio Court of Appeals overruled petitioner's

assignments of error and affirmed the judgment of the trial court. (Doc. 15, Ex. 38).

Petitioner did not seek further review in the Ohio Supreme Court.

### State Habeas Corpus Petitions

Petitioner filed three unsuccessful petitions for writs of habeas corpus in the Ohio courts

prior to his June 13, 2006 convictions and sentence. On February 15, 2006, petitioner filed a

petition for a writ of habeas corpus in the Ohio Court of Appeals. (Doc. 15, Ex. 39, 40, 41, 44)

Petitioner argued that his double jeopardy rights barred re-trial after the trial court declared a

mistrial in his first trial. On March 1, 2006, the Ohio appeals court dismissed the petition. (Doc.

15, Ex. 43). Petitioner unsuccessfully sought reconsideration of the dismissal. (Doc. 15, Ex. 45,

46).

On February 24, 2006, petitioner filed a second habeas petition in the Ohio Court of Appeals.  (Doc. 15, Ex. 47).  Petitioner again contested the declaration of a mistrial and claimed his right against double jeopardy was being violated.  The Ohio Court of Appeals dismissed the petition on March 23, 2006.  (Doc. 15, Ex. 49).

In both petitions filed in the Ohio Court of Appeals, the appeals court dismissed the petition for petitioner's failure to comply with the commitment-paper and verification requirements under Ohio Rev. Code § 2725.04.  (*See* Doc. 15, Ex. 43, 49).

Finally, on March 9, 2006, petitioner filed a habeas petition in the Ohio Supreme Court, which was dismissed sua sponte on April 26, 2006.  (Doc. 15, Ex. 50)

**Post-Conviction Motions**

On March 1, 2018, nearly twelve years later, petitioner filed a motion to correct unconstitutional sentence pursuant to Ohio Rev. Code § 2929.14.  (Doc. 15, Ex. 52).  Petitioner argued that his offenses were all one course of action.

Petitioner also filed a motion to vacate void sentence on March 1, 2018.  (Doc. 15, Ex. 53).  Petitioner alleged that the trial court failed to properly inform him of post-release control.

On March 19, 2018, petitioner filed a second motion to vacate a void sentence, arguing that he was improperly sentenced to consecutive sentences because he claimed his offenses were allied offenses of similar import.  (Doc. 15, Ex. 53).

The trial court denied petitioner's motions on March 21, 2018.  (Doc. 15, Ex. 54, 55).[4]

---

[4] On March 27, 2018, petitioner filed a motion to void sentence, again challenging the trial court's post-release control notice.  (Doc. 15, Ex. 56).

Petitioner did not appeal the ruling of the trial court.

On July 3, 2019, petitioner filed a motion to rebut his Violent Offender Database (VOD) enrollment under Ohio Rev. Code § 2903.41(A)(1)(2) and a motion for sentence modification under § 2941.25.  (Doc. 15, Ex. 57).  With respect to his VOD enrollment, petitioner argued that he was not the principal offender of the offense for which he is subject to VOD enrollment and that no violent offense was committed.  On October 8, 2019, the trial court denied petitioner's motion.  The trial court determined that to the extent that petitioner challenged his conviction and sought a sentence modification, the trial court did not have jurisdiction to entertain petitioner's claims for post-conviction relief.  The trial court further determined that petitioner's request for a hearing to determine his duty to register as a violent offender was not ripe until petitioner is released from prison.  (Doc. 15, Ex. 58).   Petitioner unsuccessfully sought reconsideration. (Doc. 15, Ex. 59).

Petitioner filed a timely notice of appeal to the Ohio Court of Appeals.  (Doc. 15, Ex. 60). In his appellate brief, petitioner raised the following three assignments of error:

1. The trial court erred by refusing to immediately provide the appellant his legal due under R.C. 2903.42 when it was moved to do so.

2. The trial court erred by summarily denying the appellant's plea to correct his illegally-imposed conviction on several charges for which there exists no evidence to sustain them.

3. The trial court erred by summarily denying the appellant's plea to correct his illegally-imposed sentence, issued in violation of existing Ohio law and the U.S. Constitution's prohibition against double jeopardy.

(Doc. 15, Ex. 63).  On December 30, 2020, the Ohio Court of Appeals affirmed in part and reversed in part the judgment of the trial court.  (Doc. 15, Ex. 66).  With respect to petitioner's

6

second and third assignments of error, the appeals court overruled the assignments of error,

finding that the trial court properly dismissed the post-conviction merger and sufficiency of

evidence claims for lack of jurisdiction. (*Id.* at PageID 494). However, the Ohio Court of

Appeals determined that, pursuant to Ohio Rev. Code § 2903.42(A)(2)(b), the trial court had

jurisdiction over petitioner's motion to rebut the VOD-enrollment presumption.[5] The matter was

remanded to the trial court and remains pending.[6]

## Federal Habeas Corpus

On May 13, 2021, petitioner commenced the instant federal habeas corpus action.[7] (*See*

Doc. 1 at PageID 6). Petitioner raises the following two grounds for relief in the petition:

> **GROUND ONE**: Petitioner is presently incarcerated on several charges for which there exists NO supporting evidence; a violation of the Due Process Clause.

> **GROUND TWO**: The consecutive sentences with which the Petitioner has been saddled were imposed in violation of the Double Jeopardy Clause.

(Doc. 1 at PageID 3-4).

Respondent has filed a return of writ in opposition to the petition, to which petitioner has

replied. (Doc. 16, 17). According to respondent petitioner's grounds for relief are time-barred,

---

[5] Petitioner filed a motion for reconsideration, which was denied by the Ohio Court of Appeals on January 28, 2021. Petitioner subsequently appealed the decision to the Ohio Supreme Court, which declined jurisdiction on May 11, 2021.

[6] Viewed at https://www.courtclerk.org/records-search/ under Case No B 0502958. This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Lets*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

[7] The petition was filed with the Court on May 21, 2021. (*See* Doc. 1). Petitioner avers, however, that he placed the petition in the prison mailing system for delivery to the Court on May 13, 2021. (*See* Doc. 1 at PageID 6). Because under *Houston v. Lack*, 487 U.S. 266 (1988), the filing date of a federal habeas corpus petition submitted by a pro se prisoner is the date on which the prisoner provides his papers to prison authorities for mailing, *see In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997), it is presumed that the petition was "filed" on May 13, 2021.

procedurally defaulted, and/or without merit.

### III.  THE PETITION SHOULD BE DENIED.

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody

pursuant to the judgment of a state court must file an application for a writ of habeas corpus

within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review
> or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action
> in violation of the Constitution or laws of the United States is removed, if the
> applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by
> the Supreme Court, if the right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could
> have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the

pendency of a properly filed application for state post-conviction relief or other collateral review.

There is no evidence in the record in this case to suggest that the provisions set forth in

§§ 2244(d)(1)(B) through (D) apply to petitioner's grounds for relief.  Petitioner has not alleged

that a State created impediment prevented him from filing the instant petition or that his claims

are governed by a newly recognized constitutional right made retroactively applicable to his

case.  Furthermore, petitioner's grounds for habeas relief regarding the sufficiency of evidence

and double jeopardy are based on alleged errors that occurred during the trial court proceedings.

Because petitioner was aware of the facts underlying his claims or the claims could have been

discovered through the exercise of due diligence by the close of the direct review, his grounds for relief are governed by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), which began to run when petitioner's conviction became final "by the conclusion of direct review or the expiration for the time for seeking such review."

In this case, under § 2244(d)(1)(A), petitioner's conviction became final on August 6, 2007,[8] when the 45-day period expired for filing an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' June 20, 2007 direct appeal decision. *See* Ohio Sup. Ct. Prac. R. 7.01(A)(1)(a)(1). *See also Gonzalez v. Thaler,* 565 U.S. 134, 149-52 (2012) (holding that because the petitioner did not appeal to the State's highest court, his conviction became final under § 2244(d)(1)(A) "when his time for seeking review with the State's highest court expired"). The statute commenced running on August 7, 2007, the next business day after petitioner's conviction became final, *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired one year later on August 7, 2008, absent the application of statutory or equitable tolling principles.

Petitioner advances several arguments in support of his claim that he is entitled to a later start date for the statute of limitations. First, petitioner contends that the limitations period in this case began to run in 2021, upon the conclusion of the appeal of his July 3, 2019 motion filed in the trial court. (*See* Doc. 1 at PageID 5; Doc. 15, Ex. 7). However, as discussed below, while a properly filed application for state post-conviction relief may statutorily toll the limitations period, it does not revive the limitations period once it has expired or otherwise impact the date

---

[8] The 45-day period actually expired on Saturday, August 4, 2007. Accordingly, petitioner had until the next business day to file a timely appeal.

on which petitioner's conviction became final under 28 U.S.C. § 2244(d)(1).  *See Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003).  *See also,* e.g. *Smith v. Inch*, No. 5:20-cv-95, 2021 WL 830101, at *5 (N.D. Fla. Feb. 16, 2021) (Report and Recommendation) ("Although state postconviction proceedings may affect the *tolling* of the limitations period . . . they do not affect the date upon which the limitations period *commences*) (citing *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001)), *adopted*, 2021 WL 826632 (N.D. Fla. Mar. 4, 2021).

Petitioner next claims that he is entitled to a later start date for the statute of limitations based on the passage of Ohio's Violent Offender Database (VOD) statute, which he claims reopened his opportunity to appeal his conviction through a direct appeal.  Petitioner argues that because the VOD statute, pursuant to Ohio Rev. Code § 2903.42(A)(2), affords him the opportunity to rebut the presumption that he is required to register in the database, the passage of the statute in 2019 "bestowed the legal right to re-challenge his conviction and sentence in a direct fashion."  (Doc. 17 at PageID 1937).  As petitioner sees it, "all statutory clocks started anew when petitioner activated his right to prove he wasn't the principal offender under R.C. 2903.41" and the trial court's ruling on his motion—which remains pending in the trial court— will result in a new finding of guilt or acquittal.  (*Id.* at PageID 1938).

The Court is not persuaded by petitioner's argument.  First, petitioner's ability to challenge the registration presumption does not enable him to pursue a second direct appeal as he contends.  Section 2903.42 specifies that a violent offender under the statute can file a motion with the trial court to demonstrate that "the offender was not the principal offender in the commission of that offense and request that the court not require the offender to enroll in the violent offender database and not have all VOD duties with respect to that offense."  Ohio Rev.

Code § 2903.42(A)(2)(b). Because petitioner argues that insufficient evidence was offered to demonstrate he was the principal offender—or that a crime occurred, for that matter—he construes the statute to provide him with a second opportunity to challenge his conviction as to the sufficiency of the evidence. However, as found by the Ohio Court of Appeals, while the trial court has jurisdiction to consider whether petitioner can overcome the presumption, it did not have jurisdiction to consider petitioner's sufficiency of evidence and merger claims. (*See* Doc. 15, Ex. 66). Accordingly, the VOD statute does not operate to re-open his conviction to direct appeal or otherwise render his conviction not "final" under § 2244(d)(1)(A).[9]

Furthermore, there is no indication that the trial court's ruling on petitioner's pending motion will result in a new finding of guilt or acquittal, as petitioner argues. The statute indicates that petitioner's motion will result in an order from the trial court specifying whether or not petitioner is required to register. *See* § 2903.42(A)(4)(a-b). In any event, while an intervening judgment may operate to restart the AEDPA statute of limitations, *see Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016) (per curiam), no new judgment or sentence has been entered in petitioner's case since he was sentenced on June 13, 2006.

---

[9] Petitioner does not raise a ground for relief relating to Ohio's VOD statute in the instant petition. However, to the extent that petitioner may contend he is entitled to federal habeas corpus relief based on errors in his post-conviction proceedings (*see* Doc. 1 at PageID 13), his claims are not cognizable in federal habeas corpus. The federal habeas court has jurisdiction to review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States. See 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); see also *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Moreover, it is well-settled in the Sixth Circuit that the "the writ of habeas corpus is not the proper means by which prisoners can challenge errors or deficiencies in state post-conviction proceedings, . . . which address collateral matters and not the underlying conviction giving rise to the prisoner's incarceration." *See*, e.g., *Dickey v. Warden*, No. 1:08cv819, 2010 WL 92510, at *1, *10 (S.D. Ohio Jan. 6, 2010) (Beckwith, J.; Black, M.J.) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986); *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002); *Alley v. Bell*, 307 F.3d 380, 386-87 (6th Cir. 2002).

The undersigned therefore concludes that petitioner's conviction became final on August 6, 2007, pursuant to § 2244(d)(1)(A).  As noted above, the statute commenced running on August 7, 2007, and expired one year later on August 7, 2008, absent the application of statutory or equitable tolling principles.

During the one-year limitations period, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review.  *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003).  "The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run."  *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).  Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute-of-limitations bar.  *Id.*

It is well-settled that a state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those prescribing the time limits for filing. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  State post-conviction or collateral review applications rejected by the state courts on timeliness grounds are not "properly filed" and, therefore, are not subject to statutory tolling under § 2244(d)(2).  *See Allen,* 552 U.S. at 5-6; *see also Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Vroman,* 346 F.3d at 603.

No statutory tolling applies under Section 2244(d)(2) to extend the limitations period in this case, as petitioner did not file any applications for post-conviction relief or collateral review

12

during the limitations period.  As noted above, petitioner filed his motion to correct unconstitutional sentence pursuant to Ohio Rev. Code § 2929.14—the first of his post-conviction motions—on March 1, 2018, more than nine years after the limitations period expired. (*See* Doc. 15, Ex. 52).

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland*, 560 U.S. at 645, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784).  A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also Pace,* 544 U.S. at 418.  Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply.  *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)).  "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

Petitioner has not demonstrated he is entitled to equitable tolling in this case.  To the extent that petitioner claims that he is entitled to equitable tolling based on his pro se status (*see* Doc. 17 at PageID 1941), it is well-settled in the Sixth Circuit that petitioner's pro se status, lack

of legal knowledge, or lack of access to legal materials are not sufficient to warrant equitable

tolling.  *See, e.g., Hall,* 662 F.3d at 750-51 (rejecting the petitioner's argument that he was

entitled to equitable tolling because of his lack of access to the trial transcript, as well as his *pro*

*se* status and limited law-library access); *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004)

(quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)) ("this court has repeatedly held that

'ignorance of the law alone is not sufficient to warrant equitable tolling'"); *Cobas v. Burgess*,

306 F.3d 441, 444 (6th Cir. 2002) ("an inmate's lack of legal training, his poor education, or

even his illiteracy does not give a court reason to toll the statute of limitations"); *Lacking v.*

*Jenkins*, No. 2:15cv3069, 2016 WL 4505765, at *4 (S.D. Ohio Aug. 29, 2016) (Report &

Recommendation) ("A prisoner's *pro se* incarcerated status, lack of knowledge regarding the

law, and limited access to the prison's law library or to legal materials do not provide a sufficient

justification to apply equitable tolling of the statute of limitations."), *adopted*, 2016 WL 6125683

(S.D. Ohio Oct. 19, 2016); *Boyd v. Tibbals*, No. 2:13cv611, 2014 WL 1400978, at *3 (S.D. Ohio

Apr. 10, 2014) (Report & Recommendation) (and numerous cases cited therein) ("A prisoner's

*pro se* incarcerated status, lack of knowledge regarding the law, and limited access to the

prisons' law library or to legal materials together or alone do not provide a sufficient justification

to apply equitable tolling of the statute of limitations."), *adopted*, 2014 WL 2931475 (S.D. Ohio

June 30, 2014).

Furthermore, although petitioner argues he diligently pursued his claims in the Ohio

courts despite having his documents repeatedly returned to him (*see* Doc. 17 at PageID 1940-41),

the Sixth Circuit has indicated that the relevant inquiry in determining whether equitable tolling

applies is whether petitioner was diligent in pursuing federal habeas relief.  In this case,

14

petitioner waited more than thirteen years—from August 6, 2007 until May 13, 2021—to file his habeas petition after his conviction and sentence became final. Accordingly, petitioner has not demonstrated that he was diligent in pursuing his federal rights. *Vroman*, 346 F.3d at 605 (finding that the petitioner's decision to proceed solely in state court "rather than filing his federal habeas petition and protecting his federal constitutional rights, demonstrates a lack of diligence"). Petitioner is therefore not entitled to equitable tolling.

Finally, petitioner has not demonstrated that the procedural bar to review should be excused based on a colorable showing of actual innocence. "To invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)). No such showing has been made in this case.

Accordingly, in sum, the undersigned concludes that the instant federal habeas corpus petition is barred from review by the one-year statute of limitations governing habeas corpus actions brought pursuant to 28 U.S.C. § 2254.[10]

## IT IS THEREFORE RECOMMENDED THAT:

1. The petition be **DISMISSED** with prejudice on the ground that the petition is time-

---

[10] Because the undersigned recommends that this action be dismissed on the ground that the petition is time-barred, the Court need not reach respondent's additional arguments on the merits of petitioner's claims or regarding procedural default. However, the undersigned notes that it appears that petitioner failed to fairly present either of his grounds for relief to the Ohio Supreme Court. As noted above, petitioner failed to file an appeal following the Ohio Court of Appeals' June 02, 2007 direct appeal decision. Under the "fair presentation" requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Ohio, includes discretionary review in the Ohio Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99–100 (6th Cir. 1985).

barred under 28 U.S.C. § 2244(d)**.**

     2.  A certificate of appealability should not issue with respect to any of the claims for relief alleged in the petition, which this Court has concluded are barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[11]

     3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

 

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[11] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his time-barred grounds for relief. *See Slack,* 529 U.S. at 484.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

THOMAS KLEIN,
      Petitioner,

    vs.

WARDEN, OHIO STATE
PENITENTIARY,
      Respondent.

Case No. 1:21-cv-357

McFarland, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

18